# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER BERRY,

                      Plaintiff,

v.                                                          Case No. 23-CV-1633-JPS

SGT. HOCH, T. MOON, LT.
STANIECK, and R. HEPP,                              **ORDER**

                      Defendants.

Plaintiff Christopher Berry, an inmate confined at Waupun Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

## 1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On December 15, 2023, the Court ordered Plaintiff to pay an initial partial filing fee of $12.45. ECF No. 7. Plaintiff paid that fee on January 3, 2024. The Court will grant Plaintiff's motion for leave to proceed without

prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2.    SCREENING THE COMPLAINT

### 2.1    Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

In January 2023, Plaintiff had permission from the hall sergeant to allow the tier worker to charge his tablet battery at the kiosk. ECF No. 1 at 2–3. Prisoners always use the kiosk to charge their tablets because the generic chargers malfunction. *Id.* at 3. The tier-tender came to Plaintiff's cell and asked if he had gotten his tablet back because it was not hooked up anymore. *Id.* At this time, Plaintiff learned his tablet had been confiscated by Officer Hill and sent to security with a minor conduct report. *Id.* The conduct report alleged that the tablet was contraband for being left unattended and charging on the kiosk. *Id.* There was a memo that prohibited inmates from using kiosks to charge their tablets because they were causing damage to the kiosk. *Id.* at 3, 5. The content of this memo, however, was unknown to Plaintiff or any other prisoners because it had yet to be distributed to the general prison population. *Id.* at 5.

Days later, Plaintiff was called to the sergeant's station to be served the conduct report. *Id.* He did not receive a copy of the report and instead had it read to him. *Id.* Plaintiff was offered a disposition of fourteen days loss of electronics, but he declined the offer. *Id.* The following day, Plaintiff learned his conduct report had been dismissed but his tablet was still missing. *Id.* Plaintiff wrote to everyone in security, but no one knew where it was located. *Id.* at 6. Twenty-one days later, Lt. Burns turned Plaintiff's tablet with an apology for the delay. *Id.* All of Plaintiff's music/podcast

subscriptions that had previously been paid in full had expired by that time and Plaintiff received no reimbursement. *Id.* Plaintiff's tablet initially worked after receiving it back, but after two days it stopped charging. *Id.*

Plaintiff filed an inmate complaint about his tablet issues. *Id.* at 7. Defendant Sgt. Hoch ("Hoch") called Plaintiff to property and directed Plaintiff to give his tablet to Defendant T. Moon ("Moon") for review. *Id.* Plaintiff complied with this order. *Id.* Rather than review the tablet as part of the investigation, Moon rejected Plaintiff's complaint and directed Plaintiff to tell Hoch how to dispose of the contraband tablet. *Id.* Plaintiff's tablet had never been labeled as contraband and Moon did it in retaliation for Plaintiff filing inmate complaints. *Id.* at 8. Moon made her anger and bias against Plaintiff known in WCI-2023-2290. *Id.* Plaintiff filed an inmate complaint against Moon, but she wrongly intercepted and rejected the complaint despite it being filed against her. *Id.* Defendants Lt. Stanieck ("Stanieck") and Warden Randall Hepp ("Hepp") had the authority to correct the abuses by Hoch and Moon, but they took no action. *Id.* at 9–10.

### 2.3 Analysis

First, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against Moon. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that Moon retaliated against him for filing inmate grievances. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816

F.3d 955, 956 (7th Cir. 2016). As for the second element, Plaintiff alleges suffering a deprivation—permanently depriving him of his tablet—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter First Amendment activity). Plaintiff alleges that Moon's actions were done in retaliation for his First Amendment activity of filing grievances. At the pleadings stage, the Court therefore finds these allegations sufficient to state a First Amendment retaliation claim against Moon.

Second, the Court finds that Plaintiff may not proceed on a Fourteenth Amendment claim for a deprivation of liberty without due process against any defendants. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such

protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary

hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff alleges no facts for the Court to determine that he suffered an atypical and significant deprivation. Although Plaintiff claims he unfairly received a conduct report for charging his tablet at the kiosk, the conduct report was dismissed only days later, and Plaintiff received no punishment. Accordingly, based on the allegations in Plaintiff's complaint, the Court cannot determine that Plaintiff had a protected liberty interest in not receiving the conduct report. As such, Plaintiff may not proceed on a due process claim for a deprivation of liberty.

Third, the Court finds that Plaintiff may not proceed on a due process claim against any defendants for the deprivation of his property. The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To claim these protections, plaintiffs must first allege a protected liberty or property interest at stake. *Averhart v. Tutsie*, 618 F.2d 479, 480 (7th Cir. 1980). Here, Plaintiff alleges a property interest in not having his personal property damaged or taken.

However, Plaintiff had remedies under state law to address his concerns, even after he filed inmate complaints. *See West v. Berge*, No. 05-C-37-C, 2005 WL 503819, at *4 (W.D. Wis. Feb. 28, 2005) (dismissing claim for unauthorized deduction from prisoner's account because prisoner had adequate remedies under Wisconsin statutes). By statute, Wisconsin affords procedures that can address random, unauthorized deprivations of property by government officers and officials. *See* Wis. Stat. § 893.35 (action to recover personal property after wrongful taking, conversion, or wrongful detention); § 893.51 (action for damages resulting from wrongful taking,

conversion, or wrongful detention of personal property); § 893.52 (action for damages from injury to property); *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (inmate-complaint review system, certiorari review under Wisconsin law, and Wisconsin tort remedies are adequate remedies for deprivation of good-time credits by prison officials); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir. 1983) (Wisconsin tort remedies are adequate for deprivation of property resulting from sheriff's execution of outdated writ of restitution). Plaintiff has not suggested that Wisconsin's post-deprivation, statutory remedies are inadequate to redress his loss. As such, he has failed to state a viable due process claim for the loss of his property.

Finally, the Court will dismiss Defendants Hoch, Stanieck and Hepp for the failure to state a claim against them. As stated above, the Court does not find that Plaintiff states a claim against Hoch for the deprivation of his property. As to Stanieck and Hepp, Plaintiff may not proceed against them for their supervisory roles alone. Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir. 2010). Only a defendant who is personally responsible for depriving the plaintiff of a constitutional right may be held liable under § 1983. *Grieveson v. Anderson,* 538 F.3d 763, 778 (7th Cir. 2008). As such, the Court will dismiss Hoch, Stanieck, and Hepp from this action for the failure to state a claim against them.

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** First Amendment retaliation claim against Moon.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendant should take note that, within forty-five (45) days of service of this Order, she is to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Hoch, Stanieck, and Hepp be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant **Moon**;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendant shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendant raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendant contemplates a motion to dismiss, the parties must meet and confer before the motion is filed. Defendant should take care to explain the reasons why she intends to move

to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at \*2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendant files a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $337.55 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 17th day of January, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.